ARLEN S. BOLAN, Appellant,

*v.*

MIGUEL A. CABALLERO, et ux, Appellees.

417 S.W.2d 538.

(*Knoxville,* September Term, 1966.)

Opinion filed July 3, 1967.

W. MITCHELL CRAWFORD, of counsel, CHAMBLISS, CHAMBLISS & HODGE, Chattanooga, for appellant.

ELLIS K. MEACHAM, Chattanooga, for appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

The Chancellor sustained a demurrer to Arlen S. Bolan's bill of review, so she has appealed to this Court assigning errors. A brief history of the case is that in December 1965, appellant filed suit against appellees alleging in substance they had been guilty of fraud and deceit in connection with certain real property she owned on which they had a mortgage, in that appellant understood from what had transpired between herself and appellees they were going to take over a house she had

bought from appellees, and on which she owed them a balance of $8,264.81, and assume an FHA mortgage on which approximately $1,568.88 was due. But instead of doing this, while the appellant was out of the state, appellees foreclosed the first mortgage and bought the house for $8,000.00, later selling it for a total consideration of approximately $14,500.00. This bill was demurred to on the grounds it failed to allege facts on which relief could be granted; failed to allege any agreement between the parties; and upon the ground that the alleged agreement upon which the suit was based was for the conveyance of real estate, or the assumption of the debt of another and since it was not in writing and signed by the parties to be charged it was void under the Statute of Frauds, T.C.A. sec. 23-201(2) (4).

After a hearing, the demurrer was sustained on all three of its grounds and the bill was dismissed. This was done on February 15, 1966.

Subsequently, on May 23, 1966, appellant filed a bill of review setting out the substance of her original bill, the demurrer and the Court's decree thereon, alleging that her solicitors, who were the same solicitors filing the bill of review, had not submitted to the Chancellor certain opinions of the appellate court which were in point and contrary to the Chancellor's disposition of the case, and so it had been dismissed without consideration of the true rule of law applicable thereto. Appellant alleged she had the right to file the bill of review under T.C.A. sec. 27-203 as construed in *Bailey v. Schubert,* 203 Tenn. 660, 315 S.W.2d 249.

It was alleged the bill had been tried on the demurrer as though it sought a recovery on an agreement between the parties for the conveyance of real estate, when in fact

and law it was an action for damages for fraud and deceit under authority of *Mashburn v. Thornton*, 35 Tenn. App. 216, 244 S.W.2d 173 and *Kneeland v. Bruce*, 47 Tenn.App. 136, 145, 336 S.W.2d 319. To this bill of review appellees demurred on the grounds no facts were set out on which relief could be granted; that on the face of the bill the prior decree dismissing the bill sought to be reviewed was res judicata as a valid final decree of the Court; that a bill of review was not a substitute for an appeal which could have been had; and several other grounds which need not be noted. Appellees also filed an answer.

After a hearing on the demurrer to the bill of review the Chancellor overruled it holding that he had originally tried the suit on the theory it sought to enforce an agreement when in fact and law it was an action for fraud and deceit, and that in his opinion the allegations were sufficient to make out such a case. Subsequently, appellees petitioned for a rehearing, at which on authority of *A. Landreth Co. v. Schevenel*, 102 Tenn. 486, 52 S.W. 148, the Chancellor set aside his former decree and sustained the demurrer. This is assigned here as error.

Getting down to the allegations of the original bill, upon which everything rests, it alleges that on August 1, 1961, appellant bought a house and lot from defendants for a total consideration of $9,500.00, paying $600.00 cash with a promissory note and mortgage for $8,900.00. That thereafter she obtained a $1,568.00 home improvement loan from the Federal Housing Administration. That in April 1964, she "abruptly decided she would join her husband" who was stationed in Florida and that prior to moving to Florida she went to the defendants and proposed that they take over the house and assume the FHA

second mortgage in return for which the complainant would give up her equity in the house and lot. All the mortgage payments and taxes were currently paid. The defendants seemed interested and promised to see about taking necessary steps to complete this transaction. The complainant left a forwarding address and the defendants promised that the complainant would hear from them. It is then alleged that approximately a month later appellant returned to Tennessee and visited the home of defendants and asked Azilee J. Caballero what steps had been taken to complete their transaction and that she stated ''that she and her husband had been busy and had not had time to prepare the necessary papers, but they would do so as soon as possible.'' Thereafter, on September 25, 1964, some four months after the May conversation with this single defendant, appellant again returned to Signal Mountain where the house was located and noticed it was occupied and assuming defendants had made some arrangements for its transfer to themselves did nothing further about the property and contacted no one about it and apparently knew nothing else about it until she was contacted by representatives of the Federal Housing Administration in the early part of 1965 and was advised that on June 9, 1964, the property had been sold under the first mortgage and bid in by the appellees for $8,000.00. Appellant alleged that notice of sale was run on May 15, May 22, May 29, June 5, and June 29, 1964, so that the notice had already run twice when she talked to Azilee.

■ Although the case has been stated at some length, since there are no assignments of error by appellees on the Court's action in sustaining the bill of review, we have for decision the sole question whether the allega-

tions of the bill as we have just recited them would if proved make out a case of fraud and deceit under Tennessee law. While this case has been approached by appellee's brief as turning on whether the allegations of the bill make out an enforceable contract, we agree with the Chancellor and the appellant that the real issue is whether the bill sufficiently alleges an action in the tort for fraud and deceit; an action of which the Chancery Court would have jurisdiction under *Kneeland v. Bruce,* 47 Tenn.App. 136, 145, 336 S.W.2d 319.

We also agree with the Chancellor in his holding that under the settled law in Tennessee such statements as appellant attributes to the appellees do not amount to actionable fraud.

It is clear appellant initiated the idea to have appellees take the property back and assume the mortgage indebtedness, and when she first broached the subject to them they made no agreements or promises about the matter at all.

On the second occasion, appellant spoke only to Mrs. Azilee Caballero, who responded, not by a representation of fact but by a more or less indefinite promise to prepare "necessary papers as soon as possible". Since there had not been any representation of fact made when appellant first brought up the subject with appellees, and since the only representation in the second conversation was by one of the parties who was not shown to have the right to bind the other party, and consisted only of a statement with respect to that single party's future conduct, we think the doctrine announced in *A. Landreth Co. v. Schevenel,* 102 Tenn. 486, 52 S.W. 148, and followed since in Tennessee applies. In that case A. Landreth Company compromised and settled a claim against A. W.

Schevenel & Company on its understanding the latter company would continue in business. When it did not, suit was brought in part on an allegation the settlement was accepted solely upon the express representation by Schevenel that it would continue in the same business as they had conducted and would resume business as before the assignment. The bill then went on to aver the debt would not have been compromised otherwise. This Court in an opinion by then Special Justice McFarland upheld the lower court's action in sustaining a demurrer to this part of the bill saying:

"Independent of the question of whether an offer to return the cash received is necessary, we are of opinion that the grounds alleged in the bill are totally insufficient. 'Misrepresentations, in order to be fraudulent, must be of facts at the time or previously existing, and not mere promises for the future.' 8 Am. & Eng. Enc. Law, 636; *Fenwick v. Grimes,* 5 Cranch, C.C. 439, Fed. Cas. No. 4,733; *Long v. Woodman,* 58 Me. 49; *Burt v. Bowles,* 69 Ind. 1; *Bethell v. Bethell,* 92 Ind. 318; *Bigham v. Bigham,* 57 Tex. 238; Kerr, Fraud & M. p. 88."

\* \* \* \* \* \*

"In *Balue v. Taylor,* 136 Ind. 386, 36 N.E. 269, the court declared that these principles, as above announced, are elementary. 'As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law, nor does it afford a ground of relief in equity.' Kerr, Fraud & M. p. 88. Thus, where it was alleged that the defendant fraudulently represented that he would grant the plaintiff an easement

by locating a street, this was held not to be fraud. *Richter v. Irwin,* 28 Ind. 26. So, where one was induced to grant another a lease on the representation that he intended to use the premises for a certain purpose, whereas he intended to use and did use them for a totally different purpose, it was held that relief could not be granted. *Feret v. Hill,* 15 C.B. 207." 102 Tenn. 489, 490, 52 S.W. 148.

In *German-American Monogram Mfrs. v. Johnson,* 133 Tenn. 571, 182 S.W. 595, it is said:

"In *Landreth v. Schevenel,* supra, it was held that misrepresentations in order to be fraudulent must be of facts at the time or previously existing, and not mere promises for the future, and therefore it was held that rescission for fraud in procuring the settlement and compromise of the claims of a wholesale merchant against a retail merchant could not be predicated on the latter's failure to keep his promise to continue the business he was then conducting."

\* \* \* \* \* \*

"There is a distinction between a representation which amounts to a mere expression of intention, which though false, is not a fraud at law, and a representation which amounts to an engagement. If the representation amounts to an engagement, the party making it is bound to make it good. Kerr on Fraud and Mistake, p. 89." 133 Tenn. 573-574, 182 S.W. 596.

In *Young et al. v. Cooper,* 30 Tenn.App. 55, 70, 203 S.W.2d 376; *A. Landreth Co. v. Schevenel,* and *German-American Monogram Mfrs. v. Johnson,* supra, are quoted from with approval.

■■ On these authorities we hold the alleged statements are not actionable. Even if the statement could be characterized as promissory fraud, which in our opinion it cannot be, it would be unenforceable under the cases cited. *Kneeland v. Bruce,* 47 Tenn.App. 136, 145, 336 S.W.2d 319, relied on by appellant, is not in point. That was a case where a gross fraud was perpetrated on an old Negro woman with little education, by the defendant deliberately concealing from her the contents and nature of the papers she was signing and withholding from her the information that he, himself, was a notary public and had notarized the papers which she had executed. The case in no way involves the Tennessee doctrine of promissory fraud.

We recognize that the law in other jurisdictions is more generous toward plaintiffs in actions for fraud and deceit based on promissory misrepresentation than it is in Tennessee (See 51 A.L.R. p. 46), and in a proper case where justice demands we may be moved in that direction, but we are not in this case where appellant was the moving party throughout, one of the appellees made no promise at all, while the other made no such fraudulent, inducing statements or promises as in our judgment should be held actionable.

The assignment of error is overruled and the decree of the lower court is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.